UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RAPHAEL DARNELL MOORE,

               Plaintiff,                Case No. 2:24-cv-13

v.                              Honorable Paul L. Maloney

UNKNOWN VRABEL et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MBP Sergeant Vrabel, MBP

Warden Sarah Schroeder, MBP Grievance Coordinator Quentin Bolton, and MDOC Grievance Section Manager Richard D. Russell. Plaintiff sues Defendant Vrabel in his individual capacity; he sues the other defendants in their respective individual and official capacities.

Plaintiff alleges that on November 12, 2021, Defendant Vrabel came to Plaintiff's cell to deliver legal mail from Plaintiff's attorney. Plaintiff notes that it was clear the mail was from Plaintiff's attorney and specifically stamped as mail that required special handling. (Compl., ECF No. 1, PageID.3; Envelope, ECF No. 1-1, PageID.14.)

Plaintiff claims that the mail was already opened when Vrabel arrived at Plaintiff's cell.[1] Plaintiff contends that the mail should not have been opened outside of his presence because Plaintiff had filled out the form regarding special handling of legal mail such that the mail could only be opened in his presence. Plaintiff inquired of Defendant Vrabel why the mail arrived already opened. Defendant Vrabel's response was "rude, degrading, and alarming" and also profane. (Compl., ECF No. 1, PageID.3.)

That same day, Plaintiff filed a grievance against Defendant Vrabel for opening Plaintiff's legal mail when he was not present and for Vrabel's inappropriate response to Plaintiff's question. (*Id.*; Grievance, ECF No. 1-1, PageID.13, 15–17.) Plaintiff presented his grievance to Defendant Bolton. Plaintiff claims that Bolton improperly passed the matter off to Lieutenant Leach and Captain Sebaly even though it was not their responsibility to handle the grievance. (Compl., ECF No. 1, PageID.4.) Lieutenant Leach responded to the grievance, denying it, and Captain Sebaly

---

[1] Plaintiff does not specifically allege that Defendant Vrabel was the person who opened Plaintiff's legal mail. If Defendant Vrabel was not the person who opened Plaintiff's legal mail outside of Plaintiff's presence, there is no basis to impose liability for that act on Defendant Vrabel. For purposes of this analysis, reading the complaint liberally to support Plaintiff's claim, the Court will infer that Defendant Vrabel was the person who opened Plaintiff's legal mail outside of Plaintiff's presence.

reviewed and signed off on the response. (*Id.*; Grievance, ECF No. 1-1, PageID.15.) Plaintiff claims that the Step I grievance response was false because Leach never interviewed Plaintiff and the response indicates that Leach interviewed Plaintiff. (Compl., ECF No. 1, PageID.5.)

Plaintiff claims that Defendant Bolton then improperly delayed in proceeding with the Step II grievance process. (*Id.*, PageID.4.) Plaintiff contends that a proper investigation that included review of the video footage of the incident would support his claim. At about the same time that Plaintiff submitted his Step II appeal, he spoke with then-warden of MBP, Erica Huss, regarding the matter. She brushed off Plaintiff's concerns. Warden Huss also signed the Step II grievance response which, again, denied relief. (Grievance, ECF No. 1-1, PageID.16.)

Plaintiff filed a Step III appeal. (*Id.*; Compl., ECF No. 1, PageID.6.) Defendant Russell responded to that appeal. He also denied relief. (Grievance, ECF No. 1-1, PageID.17.)

Plaintiff seeks a declaration that Defendants' actions violated his rights under the U.S. Constitution, a preliminary and permanent injunction compelling Defendants Schroeder and Bolton to fix and honor the legal mail handling policy, and compensatory and punitive damages against each defendant in the amount of $25,000.00.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

　　To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this action, Plaintiff contends that Defendants' actions violated his First Amendment rights and his due process rights under the Fourteenth Amendment.[2] (Compl., ECF No. 1, PageID.7.) Plaintiff also contends that Defendants' actions constituted retaliation—presumably in

---

[2] The words Plaintiff uses in the complaint suggest that Defendants have violated his First Amendment due process rights. Plaintiff's due process rights arise under the Fourteenth Amendment. Plaintiff linking his First Amendment rights and the protection afforded by the Due Process Clause is understandable. There are many constitutional protections implicated by the handling of legal mail, including due process. Plaintiff alleges no facts that support an inference that Plaintiff Vrabel's actions had any impact on the process to which Plaintiff was entitled in whatever proceeding was the subject of Plaintiff's legal mail. Plaintiff was not actually deprived of his legal mail. At most, Plaintiff was deprived of his right to ensure that Defendant Vrabel or others had not improperly read his mail.

violation of the First Amendment—and cruel and unusual punishment, in violation of the Eighth Amendment. (*Id.*)

## III. Defendant Vrabel

Plaintiff contends that Defendant Vrabel opened Plaintiff's legal mail while Plaintiff was not present on one occasion and, when Plaintiff confronted Vrabel about it, Vrabel was rude and profane.

### A. First Amendment Rights Related to Legal Mail

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Those legitimate penological objectives include prison security and the objective of maintaining a secure prison allows "prison officials [to] open prisoners' incoming mail pursuant to a uniform and evenly applied policy . . . ." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993).

But legal mail may impact a "prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) When those rights are at stake, a "prison official[']s unfettered discretion to open and read an inmate's mail because [of] a prison's security needs do[es] not automatically trump a prisoner's First Amendment right to receive mail . . . ." *Id*. To protect those rights, courts have extended protections to prisoners' legal mail that do not exist for general mail. For example, "the opening of 'legal mail'

should generally be in the inmate's presence." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. "Mail from an attorney . . . is legal mail as a matter of law." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Sallier*, 343 F.3d at 877). This includes where the attorney does not have an established attorney-client relationship. *See id.* Plaintiff's allegations suffice to show that the mail at issue here is "legal mail."

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 609), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to

the level of a First Amendment violation). Recently, in *Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659 (6th Cir. Aug. 4, 2023), the Sixth Circuit, citing *Colvin*, confirmed that a single isolated event of tampering with legal mail "does not rise to the level of a constitutional violation." *Id*. at *3.

Here, Plaintiff alleges Defendant Vrabel opened Plaintiff's legal mail outside of his presence on one occasion. The facts alleged by Plaintiff do not suggest blatant disregard for mail handling by Defendant Vrabel. *See Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *8 (W.D. Mich. June 29, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim."), *report & recommendation adopted*, 2010 WL 3474988 (Sept. 2, 2010). Accordingly, the Court concludes that Plaintiff has failed to state a claim for violation of his First Amendment legal mail rights.

### B.    Due Process Right Related to Legal Mail

The elements of a procedural due process[3] claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff was not deprived of his property interest in the legal mail. He received the mail. Perhaps it could be argued that he had a liberty interest in receiving his legal mail and that he was deprived of that liberty interest when his mail was opened outside of his presence. But, even if

---

[3] Plaintiff's allegations clearly focus on procedural due process: "my legal mail was opened outside of my presence so that violated my First Amendment Procedural Due Process Rights . . . ." (Compl., ECF No. 1, PageID.7.)

such a liberty interest existed, under *Parratt v. Taylor*, 451 U.S. 527, (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986), Plaintiff would have to allege that he did not have an adequate post-deprivation remedy. *See, e.g.*, *Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669, at *3 (6th Cir. July 31, 2023) (noting that even if the prisoner was deprived of a liberty interest when his mail was opened outside of his presence, "he presented no evidence that he did not have an adequate post-deprivation remedy" (citing *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010))). Because Plaintiff has not alleged that post-deprivation remedies were inadequate, if there is a liberty interest in being present for the opening of legal mail, he has failed to state a claim for deprivation of that interest.

## C.  Eighth Amendment Verbal Harassment

Plaintiff also complains that Vrabel's response to his inquiry regarding the legal mail was "rude, degrading and alarming." (Compl., ECF No. 1, PageID.3.)[4] That is the only allegation in his complaint that, construed liberally, might implicate the protections of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

---

[4] According to Plaintiff, after he confronted Defendant Vrabel about opening Plaintiff's legal mail, Vrabel replied: "No need to bitch at me about it I really don't give a flying fuck about you or your fucking legal mail you got that boy." (Compl., ECF No. 1, PageID.3.)

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Walker v. Baker*, No. 23-1232, 2023 WL 6380124, at *3 (6th Cir. Sept. 7, 2023) (noting that "[a]s the district court recognized, the use of harassing or degrading language in the prison context almost never rises to the level of a constitutional violation" (citing *Ivey*, 832 F.2d at 955; *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 1990))); *Rush v. Newcomb*, No. 19-2013, 2020 WL 5270438, at *2 n.1 (6th Cir. July 8, 2020) (stating that "harassing or degrading language does not amount to a constitutional tort and would not support [the plaintiff's] Eighth Amendment claim" (citing *Dellatifa*, 357 F.3d at 546; *Violett v. Reynolds*, 76 F.App'x 24, 27 (6th Cir. 2003))); *Hollis v. Perttu*, No. 16-1515, 2016 WL 11854471, at *2 (6th Cir. Nov. 16, 2016) (explaining that "harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort" (citing *Johnson v. Dellatifa*, 357 F.3d at 546)).

Defendant Vrabel's tirade, though unwarranted and unprofessional, is the sort of harassing and degrading language that does not rise to the level of punishment. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Vrabel arising from his alleged verbal abuse.

### D.    Retaliation

Plaintiff also contends that when his legal mail was opened outside of his presence that it "constituted retaliation . . . ." (Compl., ECF No. 1, PageID.7.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's filing of the grievance against Defendant Vrabel was clearly protected conduct. But the timing of the events alleged in Plaintiff's complaint logically precludes the possibility that the grievance was motivated by Defendant Vrabel's adverse actions. Plaintiff's mail was opened outside of his presence and Vrabel communicated with Plaintiff using rude and degrading language before the grievance was

10

filed. Therefore, the Court concludes that Plaintiff has failed to state a retaliation claim against Defendant Vrabel.

## IV.    Defendants Bolton and Russell

Plaintiff alleges that Defendants Bolton and Russell procedurally mishandled Plaintiff's grievance against Vrabel in various ways and played some role in denying relief. The alleged misconduct, however, does not rise to the level of a constitutional violation.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

And mishandling an administrative grievance is not active unconstitutional behavior. First, interference with the grievance remedy does not violate due process because Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983);

11

*Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, these Defendants did not deprive Plaintiff of due process.

Moreover, Defendants' actions (or inactions) with regard to the grievance process do not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure).

Plaintiff also suggests that these Defendants' roles in resolving his grievance may have prejudiced Plaintiff "from taking legal and proper actions." (Compl., ECF No. 1, PageID.6.) Plaintiff has not been denied the opportunity to pursue his legal remedies by Defendants' grievance responses. Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate

the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing authority, Plaintiff's allegations against Defendants Bolton and Russell regarding their respective roles in responding to Plaintiff's grievance fail to state a claim.

## V.    Defendant Schroeder

Plaintiff's allegations reveal that Erica Huss was serving as MBP warden at the time of the events alleged in Plaintiff's complaint. Plaintiff does not allege that Warden Huss's successor, Defendant Schroeder, played any role in the events described in the complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x

762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff's allegations regarding Defendant Schroeder fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

It is possible that Plaintiff named Defendant Schroeder as an official capacity defendant for purposes of prospective declaratory or injunctive relief. Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity; in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has

14

not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Nevertheless, an official-capacity action seeking prospective injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (discussing that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, as the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff does not allege an ongoing violation of federal law. Indeed, Plaintiff does not challenge the MDOC's legal mail policy; he challenges Defendant Vrabel's failure to follow it more than two years ago. Plaintiff does not allege that Defendant Schroeder was actively involved in that conduct. Plaintiff's allegations offer no suggestion that Defendant Schroeder might play some role in a future failure to open Plaintiff's legal mail in his presence. Absent some role in the contemplated ongoing violation of federal law, Defendant Schroeder cannot be sued for injunctive relief without implicating the Eleventh Amendment. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048–49 (6th Cir. 2015); *accord Doe v. DeWine*, 910 F.3d 842, 848–49 (6th Cir. 2018).

For all of these reasons, Plaintiff has failed to state a claim against Defendant Schroeder.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 27, 2024                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge